This is our second case of the morning. In re M.S. 414-0857 for the appellant, Mr. Resett, for the appellee, Mr. Robinson. You may proceed. Good morning, your honors. May it please the court, my name is Paul Resett. I'm an assistant attorney general for the state of Illinois, and I represent the former acting director, Bobby Gregg, and the guardianship administrator, Deborah Dyer Webster, of the Department of Children and Family Services. The juvenile court abused its discretion here when it found the department respondents to be in indirect civil contempt. It did so because the contempt order was defective in a number of ways. First, the juvenile court has never identified a specific court order, whether in the rule to show cause at the evidentiary hearing or in the contempt order itself, that requires the department to remove minors from a foster home upon the positive drug test of a foster parent. It is doubtful that the February 2014 standing order regarding foster parent drug drops has any applicability here at all, because that order says that in every initial case the drug drop should be conducted, but this was not an initial case because the children had already been placed with the grandparents six months before the standing order was issued. In any event, even if the standing order applied here, it does not say that minors must be removed if there's a positive drug test. In fact, it does not address at all what steps must be taken if there's a positive drug test by one of the foster parents. Thus, the standing order cannot constitute a valid basis for a contempt finding here. And the assistant state's attorney below argued that common sense could be the basis for the contempt finding, but obviously parties cannot be held in contempt based on someone's subjective notion of what common sense is. It has to be based on a court order. The juvenile court also referred in the rule to show cause to certain unspecified meetings that she had with the department regarding foster parent drug drops. And in the rule to show cause, the court stated that she had allegedly conveyed at those meetings that if a foster parent tested positive for drugs, that she would like the minors to be removed. However, the rule to show cause did not identify when these meetings occurred, where they occurred, who the attendees were, etc. Would that make any difference? It would. I mean, if the court could show that specific department employees, and then those employees themselves were held in contempt, knew of such an order, then I think... No, I'm saying there are conversations at meetings about policy and good ideas. Maybe that's a good idea. Correct, Your Honor. But what difference would it make if there were such conversations? I mean, that's certainly our position. The court characterized those comments as direct orders in the rule to show cause, although then at the evidentiary hearing, she never mentioned those meetings again. Instead, the focus shifted to the standing order that had been issued in February 2014. And there was no evidence put on by the state's attorney or anyone else about any such meetings or that any oral orders were made at the meetings. In fact, the one witness that was questioned about those meetings, Todd Beard, the social caseworker for the Lutheran Social Services, denied that any such discussions had been had in his presence. So, there was no evidence that any such comments or oral orders were ever reduced to writing, were ever transcribed by a court reporter, or were ever entered onto the docket by the clerk in any specific case. So, these were not the sorts of things that could even have been appealed if, for instance, the department thought in a particular case that removal would not be the appropriate action. For example, if the grandparent might have had a prescription, which is why they tested positive, or it might have been an isolated occurrence, which would not require sort of a zero-tolerance removal of the children. Further, even if this standing order from February 2014 could be construed as requiring removal when it does not address removal, both the acting director and the guardianship administrator testified that neither one of them was even aware of the standing order, either at the time of the removal of the children, at the time of the positive drug test, or at the time of the removal of the children. The children were removed for another reason, but it was before the court issued the rule to show cause, and it was before the evidentiary hearing. The children were removed at the end of May, the rule to show cause was issued at the end of July, and the evidentiary hearing on the rule to show cause was held in early September. So by then the children had been removed for a long time, and both the acting director and the guardianship administrator testified that they were not aware of the standing order, even if it could be construed to require removal at the time of the positive drug test or prior to the removal of the children for other reasons. If the juvenile court did believe that she had made comments which she viewed as orders at these meetings about removing the children, you would think that she would have told the social worker when he brought to her attention that the grandfather tested positive for drugs that she wanted the children removed, but she didn't do that. Instead she just said file a report, file a letter, and that she would revisit the matter, and then nothing happened for four months until two months after the children had already been removed, suddenly she sui sponte issues this rule to show cause, claiming that the department respondents were in contempt of some order requiring removal of the children, which we still have not seen any such order. Similarly, if the assistant state's attorney thought that common sense required removal of children any time that there was a positive drug test, one would think at that April 2nd meeting when it was discussed that she would have asked the judge to order removal of the children, but she did not do so, and then now they're enthusiastically arguing that the department should be held in contempt when they didn't even seek removal of the children themselves. In addition to the failure to point to a specific order requiring removal of the children, the purge provision is also defective. If there had been an order requiring removal of the children, or any children, once a positive drug test is found to have occurred, and the department respondents knew of that order and defied it, then a proper purge provision would be comply with that order to remove the children, or else a sanction would be imposed. But here the minors had already been removed two months before the rule to show cause was issued. The matter was moved. The children can't be removed a second time. So rather than acknowledging that this really was not a proper contempt case, or that purging was necessary, the court instead conducted this bizarre, what she called a purge provision, where she essentially ordered the department to do two things. One was to conduct an internal audit of the efficiency of its procedures, and the other thing was to obey all court orders in all other cases pending in juvenile court in Vermillion County. And there was no date for those provisions to end. In civil contempt, you're supposed to have the keys to your cell. You're supposed to be able to purge at any point, but the department respondents did not have the power to comply and to terminate the contempt proceeding. There's not supposed to be punishment in civil contempt. Any kind of sanction is just to motivate the respondent to comply with the earlier order. But even if there had been an earlier order requiring removal of the children, the children had been removed at that time, so there was really nothing to be done at that point. So this was not a proper purge provision. The juvenile court also confused civil and criminal contempt because she said that if the department respondents did not conduct this internal audit and did not comply with all orders in all other cases, that they would be sentenced to the punishment of attending five different hearings in a month at the Danville Juvenile Court. So at any time in the juvenile court's opinion when it felt that the department had not followed an order in another case, it could kind of short-circuit the normal contempt procedures, not issue a rule to show cause or hold an evidentiary hearing, but just go straight to the sanction. And that is not a proper contempt procedure. Unless this court has any other questions, we would ask that you reverse. Thank you. Let me start by saying no one is enthusiastic about this case or any of this line of cases. I've traveled personally to Vermilion County on these matters, discussed it extensively with the folks involved. No one is enthusiastic about any of this. I want to address one thing first. I saw Justice Connect sort of nodding along with the argument that counsel made this morning. It seems somewhat persuasive and it flows. Except the argument that he's making is not exactly related to the order that the court entered in this case. In this case, on the rule to show cause, part of the court's order related to imposing some purge provisions to get the trial judge, I'm sorry, to get DCFS to comply with orders that the trial judge had previously issued. That's what these purge provisions are all about. Now, this came up previously in a January oral argument in L.R. in this series of cases. And Justice Connect didn't have the luxury of sitting through that proceeding. But I want to point something out because the initial argument here is that DCFS was not aware of those orders. And that is the specific order, putting aside the propriety of whether the court can issue any of these orders. Just for the moment, putting that aside. The question is, was DCFS aware, their line troops, were they aware of this order? At that January 15th oral argument in L.R., counsel represented to this court in response to a question at 5.05 and 5.25 of the oral argument record, that, and Justice Harris will probably remember this, Justice Holderwhite pushed back and said, well, wait a minute, this blanket order, whatever it is, it didn't say that you have to remove the children, right? And counsel said, judge, there's no other logical interpretation. Everyone knows, quote unquote, everyone knows what's going on in Vermillion County. When someone tests positive for drugs in this case, in these cases, the judge wants us to remove the children. Everyone knows it. In fact, again, at 9.01 and 9.30 of the record, counsel represented to this court, who's now representing the former acting director of DCFS, in response to a back and forth between Justice Holderwhite and Justice Turner, when Justice Turner pushed back and said, no, no, wait a minute. That's not what the order says. You're sort of liberally construing that and it could mean a couple of things. Justice Harris followed up on that. He responds again. Your Honor, it's the only logical interpretation. Everyone there knows this. You know what's going on here. And Justice Harris pushed back further and says, well, wait a second. If someone tested positive for illicit drugs, DCFS would certainly remove the child immediately. And counsel said, well, if they tested positive for cannabis once, although I'll note you could never know that from a drug test, how often they used the drug. But he further said, and it might be a different story if the person was a steady heroin user. And this is sort of the backdrop, Your Honor, for why the judge in this case, similar to the L.R. case, was doing what it's doing as a last resort. And I want to address those things up front, so the court can have sort of a broader context of the order that's issued in this case, vis-a-vis that first argument that DCFS makes in this case. The order wasn't to have this specific child moved in this case. In fact, that's part of the problem here in Vermillion County, is the broadness of the orders. This was a broader order. This was an order that said something akin to, you have to be here at 8.30 rather than 9 o'clock for a 9 o'clock argument in case we decide to start at 9 o'clock. It's a court order. Court orders don't have to be issued in writing. They don't have to be issued from the bench. There's a series of cases from this court that explain that. But I do want to go back. It's convenient, though, if you want to hold other state agencies in contempt that you actually have orders that somebody can look at and reference. Precisely. And I think the Vermillion County judge in this case agrees with you, Your Honor. That dovetails nicely to my opening, which I had to jettison in the last one I worked hard on. So I'm glad to get back to it, which is, there was no contempt imposed in this case. There was no full adjudication of contempt. That's why there's no jurisdiction here. In fact, the court recognized at the rule of show cause hearing, which was, you know, would I have conducted it differently? Maybe. And these things don't happen in a vacuum. These contempt proceedings happen over a period of time where the court reaches a crescendo of frustration because someone's not complying with an order. To use his words, the only logical interpretation of which is that they have to remove these kids when someone tests positive for illicit drugs. The court brings them in, questions them, and says, I know what the law related to fiduciary duties and agency is, which is that you're responsible for this agency. The buck stops with you. And so you're responsible for the court's orders. But I recognize you have testified here today at this rule of show cause hearing that you're the director and it would be physically impossible for you to hear and understand and comply with every order. You've got tens of thousands of these orders issued on a yearly basis. So what the court did was said, now I'm going to make a purge provision. I'm going to let you see this with your own eyes and hear it with your own ears, and then you can comply with it. Instead of complying, which they are obligated to do by law, they construed, I argue misconstrued, this as an injunction and took an interlocutory appeal under 307A1. In Country Mutual versus Hilltop, which is a December 2014 in which Justice Harris and Justice Appleton concurred, this quote wrote as follows, presiding justice spoke, quote, the fact that a party disagrees with a court's order does not mean that the party can simply ignore the order. This is regardless of the merit of the order. In L.R., this court thoughtfully considered that case and determined that as a sort of procedural mechanism, this blanket nature of the order is improper. The state accepts that. I'm certain the court accepts that. But that doesn't mean just because it was technically improper that they were permitted to ignore it. Now, as an aside, I'd say as in the last case, DCFS has the burdens in this case, and it was their burden to make that order part of the record, even at the trial court, and they didn't do it. And they had plenty of time to do it leading up to this case. I agree with counsel that standing order had nothing to do with this case, because the order that the court was finding them in contempt for in this case was the order that they remove children when someone tests positive for illicit drugs, a foster parent. And that order appended at A-9 to their brief doesn't say anything about that. It's not part of this case. It's, I think, the classic example of a red herring. It's utterly meaningless. The fact that they used it at all below was simply to demonstrate what he demonstrated at oral argument in L.R., which was this is all part of the broader context of this. The court issued this order. They complained about that order. This court considered it. Both parties made vigorous arguments related to it, and this court rendered a judgment. We have no problem with that. The trial court accepts it. In fact, I've provided a flow chart in light of that case for the trial judge below to be provided by the state's attorney so that these things can proceed in the manner they should. But the question here has nothing to do with that. The question is, was there an order out there that everyone was aware of that these children were to be removed when a foster parent tests positive for illicit drugs? And the question unequivocally is yes. There was an order, and they knew it. And it doesn't have to be in writing. It doesn't have to be made part of the docket entry. Should it be? If I were the trial judge, I would make it part of the record. But it's not our burden to demonstrate that on appeal. It's theirs. If you were the trial judge, would you think they had the authority to enter such an order? Yes. And this is unlike the sort of blanket order in L.R. because that, according to this court, touched on the statutory provisions under the Juvenile Court Act. This is something different. Courts in Illinois, as Your Honor knows, sit in law and equity. And I would say that this is a case where if I felt, as in this case, and this is why I pointed out the counsel's response to Justice Turner at the last oral argument. If I felt like there was a shred of evidence or a chance in the world that one of these kids was going to be left with a steady heroin user, I would take all these folks aside and do exactly what the trial court did in this case, which is I would say, everyone here involved, just so you know, I want these kids, these foster parents, removed from these folks if they test positive for illicit drugs.  I have the authority to do that. I'm putting you on notice. That's what I want. Let's assume, Your Honor, that property of that order is not good. The court couldn't do it. I'll concede that point. Country Mutual says it doesn't matter. They have to comply with it. And you understood, but you said you wanted us to understand the context. Correct. And the context, part of the context, is the question whether or not the juvenile court judge in Vermillion County and the Department of Children and Family Services can function with each other to accomplish goals which sometimes limit the power that a court has just as we know the power of the courts and prisoners to interfere in the administration of the Department of Corrections. We might think we know better, but that's not the way it works. And anyone who's ever been a juvenile judge has butted heads with the Department of Children and Family Services because judges tend to believe that they know best. And sometimes they do and sometimes they don't. I take that, Your Honor, but I'll also push back on it just a little bit. And the reason that you cared so much when you were a juvenile judge was because even in criminal cases where you're dealing with people's liberty interests, this is something different. Something I don't think I would appreciate it as much before I had a daughter. But it's different. And if there's something that you can do as a trial judge, you push as hard as you can. And I would say, objectively speaking, what happened here is pretty fair. Indeed, they haven't done anything yet. They haven't been forced to do anything by the trial judge. And that goes back to the point that I hope I eventually get to make, which is, there's no jurisdiction here. As an aside, I'd like to say, I'd like to attempt to rehabilitate the, if it's necessary, I hope it's not, to rehabilitate the state's attorney's standing with this court. I filed a motion to dismiss sort of as a professional courtesy to the court and counsel related to this issue. And in response to that, we got a response from DCFS that described our motion as frivolous. We pushed back on that a little bit in our motion to strike, saying, look, that's not well taken. Our state's attorney is an elected official. We can't have a representative from the Attorney General's office describing his filings as frivolous. It's not, it's not good policy. They responded with a three-page motion in which they referred to it, I would say, quadrupling down on the frivolous nature of our motion. Indeed, using the word frivolous seven times in that motion. On October 27th, before DCFS even filed their brief in this case, the state's attorney sent an email as a professional courtesy to counsel stating that we had just been dismissed in a case called In Re Contempt of Uphoff. It's an unpublished decision. I'm not pointing this out for the merits. Justice Connett concurred at that disposition. We, in that case, made essentially, personally, I made the same argument that counsel makes in this case related to contempt finding of the state's attorney. We were dismissed in that case. I sent a copy of that case just to put you on notice. This is probably what I'm going to be arguing in this case. To use a baseball analogy, it's spring training time after all. We're simply advocating for the position that we get the same calls from the batter's box as we got from the mound. I know, obviously, this is a different panel of judges. This court is free to call its own strike zone, but it certainly takes our argument out of the frivolous category. Obviously, that case is not a published opinion, but to the extent that our arguments are described as frivolous is, I think, in the words of Justice Steigman, risible. On the jurisdictional issue, I would say Valencia and Gutman control. Please take a close look at Gutman from 2008. This is a case. If I can digress for a moment, the reason why I continue to use the same argument in the motion and then cited it verbatim in our brief in this case is because I essentially lifted it from presiding Justice Pope's disposition in Uphoff. I felt infidelity to this court that I had an obligation to put that forward and make those same arguments. It's not a substantive argument per se. It's a jurisdictional argument. I think it's essential for this court to be apprised of that. In that case, the court said that this is Gutman 2008 from the Supreme Court that the court must impose a sanction on civil contempt. Here's the interesting part about that. The court said the reason it's so important that you follow 304A5 whenever contempt is being contested, whether the substance of that is valid or not, is because if you use some other rule it renders 304A5 quote-unquote superfluous. It swallows the rule. If there's another rule available, counsel has to use it. That's the point. Now DCFS contends that these cases don't apply because this was not contempt and they cite the case of I think it was the urologist from Bloomington but because it's an injunction. But an injunction cannot be defined as DCFS would have this court define it. That is any order that forces a party to refrain or to do or refrain from doing something. That's too broad. Otherwise 307A1 would permit a party to take an interlocutory appeal on any order issued by the court. I'll point the court to an ISBA article from December 2014 entitled Stop 307A1 Appeals Not For Injunctions Only. And I know Justice Harris knows the importance of these arguments having served as a member of the editorial board for the ISBA. This is where in cases like this it can become important where there's not case law on point. These things can be very instructive. I reached out to the author of this article and I asked I said have you seen 307A1 used in the contempt context? And her response was no. In fact, the last paragraph of that article states as follows quote if your order is not appealable under other rules governing appeals remember that it might be appealable under rule 307A1. But here's the key. But where it is appealable under another rule you have to use that rule. Here it's 304A5. 304B states as follows the following orders are appealable without a finding required for paragraph A. And of course that's judgments that don't dispose of the entire case. 5.  finding a person or entity in contempt of which imposes a monetary or other penalty. So what have courts found to be injunctions? Stays of litigation, orders compelling arbitration, gag orders. But what's key is what they haven't found. And the fact that cases exist that say 307A1 doesn't apply proves that the way they define 307A1 can't be the way the Supreme Court defines it. They include orders compelling mediation. That compels someone to do something they otherwise wouldn't want to do. And importantly discovery orders. And why? This is important because those must be tested with a contempt citation which is appealable under 304B5. And the author cites a specific case from the Supreme Court in that article regarding 304A5 in that regard. So I would just ask this court, and I see my time sort of winding up here, but I would just ask this court to analyze carefully that jurisdictional issue because at the end of the day, just like in country mutual, they're required to follow the court's order. They didn't come to the court. They didn't try to comply. They said we're just not going to do this. Importantly, the order on the rule to show cause is not as counsel describes it in this case. It says pending. And the word pending doesn't mean pending in this regard. It's not ours. They could have attempted, and if they didn't comply to the extent the court wanted them to comply with those orders, they could have come back and said this is burdensome, the court would have imposed a sanction, and then we'd be here on our own. So that's the reason why they didn't come to the court. So I'm really kind of mystified why they think this is a classic case of contempt and why the book needs to be thrown at the department. I think a little background would be helpful to understand the context here. What had originally happened was that in December 2013, a particular foster parent showed up to juvenile court apparently under the influence of some sort of substance. The judge asked her to take a test. She voluntarily did so and tested positive for illegal drugs. So from that point on, the judge started imposing a blanket rule. First, in December and January, she would issue identical orders in separate cases. We appealed from 13 of those and this court reversed them recently and now are finding that the court could not have a blanket rule requiring that we test all foster parents within 24 hours of placing the  So while in this case the state attorney has fought hard for this court not to see that standing order, I don't know why. Everyone that's practicing down in juvenile court in Danville knows that it exists. It was talked about ad nauseum at the evidentiary hearing on the rule to show cause. That was the order that the juvenile court ultimately said was the basis of contempt. She asked the Department of Respondents Council if he had seen it. He said he had not. She had the assistant state attorney hand him a copy and open court to read. So there was a blanket rule which this court recently said was the basis of contempt. In that particular case, even though the appeals were moved because the capable of repetition but evading review exception applied, this court reversed those 13 orders even though we had complied and done the drug test. Here, that standing order, and it's funny, counsel in our case was insisting that there is no blanket rule, that there is no standing order, that the judge only does it in particular cases when the facts warrant, and that was totally untrue. Perhaps he thought he couldn't defend the blanket rule, but the standing order definitely exists. We've attached it to our brief. We ask you to look at it. If there's any doubt about its authenticity, feel free to contact the juvenile court and ask. The assistant state attorney represented at the evidentiary hearing that the judge refers to the standing order in every juvenile case. So it clearly exists, but all it says is the department must test the parents for drugs within 24 hours of placing of the child. If the judge asked the judge, okay, we have a positive test, what would you like us to do? She would not answer. If, in fact, she had told the department repeatedly in meetings, and that would be caseworkers, not the acting director and the guardianship administrator, they may have known, but the people that were held in contempt didn't know, if she had told them that that was her strong desire, wouldn't she have ordered it? Wouldn't she have repeated it? She did nothing. So if she had ordered us to remove the children, we either would have done it, or we would have appealed and said, well, we did get one from this court, and that's why we haven't complied with either one of these injunctions, either to conduct the audit or to attend five court hearings within the course of a month. So I do take umbrage to the notion that we do not respect court orders and that we openly defy court orders. And as far as, he still hasn't really identified what order we violated. There's no order in the record, and we sent an evidentiary hearing, please tell us what order we violated. We can't prove a negative. I mean, show us the order that we allegedly violated, and that should be the initial step before even considering whether it was willful and consummatious, and it couldn't be because even if they had seen the standing order, it doesn't talk about removal of the children. So, just briefly, because my time is running out on the jurisdictional issue, we acknowledge that in a normal contempt case where there's a proper purge provision, that either you comply with the purge provision, which is obey the earlier issued order, and don't appeal because no sanction is ever imposed, or you refuse to comply with the purge provision, wait until the sanction is imposed, and then appeal under 304B. However, here there was no proper purge provision. The judge called it a purge provision, but it was really a set of injunctions that were issued. She did not say remove the children and the contempt will be discharged, perhaps because it would have been impossible at that point because the children had already been removed months earlier. Instead, she said conduct this audit, which has nothing to do with removing children, or if you don't choose to do that, then you can show up for the five hearings. It was pick your set of injunctions. That's why it's a 307, and that's why it's not a 304B. I see my time is up, so I ask for your support. I speak only for myself, and I use the word not because I'm suggesting you shouldn't use it, and I speak for myself rather than the panel. I take umbrage that you're here, both of you, and that umbrage is not directed at you as counsel. It is directed at the entities involved. This should be resolved. This reminds me of a marriage case where we ought to have mediation, and the parties on the opposite sides of the table ought to lay their power aside, their mantle of power aside, and say, what is it you want us to do, and then what is it that we can do? And I would hope that we don't see any further cases of this. Thank you.